May it please the Court, Jim Patterson on behalf of Plaintiff and Appellant and the proposed petitive class. CAFA confers federal jurisdiction over certain class actions where the amount in controversy exceeds $5 million. The party in favor of federal jurisdiction obviously bears the burden of proving that the amount in controversy element is met. And this very court in the Votermilk v. U.S. Bank case confirmed that in a situation where the plaintiff has voluntarily limited all claims to less than $5 million that the defendant must prove to a legal certainty through summary judgment type evidence that the $5 million threshold in fact has been met. Here the defendants have relied on three basic false assumptions that they've then used to calculate a damage model to try to meet their burden and obligation to show the $5 million. The three basic assumptions that are false are first, the class size. They haven't provided any information showing the actual class size. That information is readily available from their records. They could very easily tell us how many non-exempt employees were employed during the four-year period. But rather than do that, what they've done is they've taken snapshots over the four-year period. They've picked one day from each year and told us that on that one particular day there were a certain number of managers and a certain number of non-management employees. Before you get too far into this general argument about numbers, what is your idea of what prove with legal certainty means? I thought a lot about that. It's obviously the standard that the Ninth Circuit came up with. That must be good. Was that? It must be good, he says, if we came up with it. Right. Well, it's the Ninth Circuit's saying. I mean, it's our standard. Sure. There might even be some of us who don't quite agree with that standard. Right. Or understand it. Or understand it. But nonetheless, I guess my worry first before we begin too far is what it really means. I believe it's something less than absolute certainty. It's certainly much more than preponderance of the evidence. Maybe something akin to beyond a reasonable doubt type standard. It's interesting because the Lodermilk Court pointed out two principles underlying its decision. The first was that the federal courts are of limited jurisdiction and jurisdiction has to be narrowly construed. And the second is that the plaintiff is the master of her complaint, and she has the right and the ability to choose to seek less than the full amount of damages that might otherwise be owed to her. So it's sort of a strange interaction between the ability to do that versus the ability for the defendant to then come back and say, well, that doesn't matter, set that aside. We can show you to a legal certainty, some very high standard, that the amount in controversy actually does exceed a good $5 million. And at the place we are, we're reading allegations, correct, really, of complaints? They're allegations, that's correct. And there are admittedly some broad and general type allegations in our complaint, as you find in every other complaint in the Lodermilk complaint. Do we take the plaintiff's allegations as true? I believe you take the allegations as true, including that the amount in controversy is less than $5 million.  I do want to go through the three. There's three basic false assumptions here. The class size, again, is undisclosed. The number of shifts at issue is wrong. What they've done is essentially taken that snapshot and said that each employee for each year worked 250 shifts. That's not right. We know that's not right. It's something else. What they should have done was provide the court and us with an accounting of the shifts that the class members actually worked. In today's age, that's not a difficult task to do. They used a software program, probably Kronos, one of the timekeeping systems, that would relatively simply be able to print out the number of shifts that each class member worked throughout the entire time period. The third false assumption is they've taken the four-year period and come up with an average wage that employees earn per hour. Now, it's not a weighted average. A weighted average would be better. I don't know that that would reach their obligation. I think what they should do is they should use the actual hourly rates that each employee earned. And, again, they can find that directly from their own records. But if you're not going to require them to use the actual hourly rates, at minimum they should have used a weighted average, whereby you would look at the number of shifts worked at certain hourly rates and then from that extrapolate it out what the weighted average would be. That would protect against situations such as using lower-paid employees to do the bulk majority of the work or to work more shifts versus maybe some specialists that are very high-paid hourly specialists that work on a part-time basis or on a consulting-type basis. So what the Lowdermilk Court did and what every other court that's been trying to do this analysis has done is gone through the claims that are identified by the defendant as the damage model, if you will, trying to show it's the $5 million. And here, all of these, the three assumptions that I just talked about are being applied to every single claim in their damage model. But there's additional false assumptions as you go through. The first claim is for overtime, unpaid wages, off-the-clock type. And what we allege is that employees are... Is that in Count 1 you're talking about? Count 1, that's right. What we allege is that employees are required to arrive 15 to 30 minutes before their shift starts when they're opening the store. And the employees that are required to close the store clock out, and they stay 15 to 30 minutes after they clock out. And that's because you have to clock out and you have to put all the stuff away, close up, and leave. That's not every shift. We don't allege that every person works every single shift, either opening or closing the store. We don't know how many shifts the class members worked in which they opened or closed the store. Only the defendants would know that information. Furthermore, they've taken... Again, they've used an average of the 15 to 30 minutes and come up with 23 minutes, which on its face doesn't seem entirely unreasonable to me, but, again, it's not my burden to show how much time each employee worked before or after the shift. That's something we would... To a legal certainty. They have to do that to a legal certainty, not me. The second, count two, is for meal break violations. And what they have done is they've essentially just taken 250 shifts, which is the absolute maximum number of shifts anybody would work is getting two weeks vacation. So there's 52 weeks in a year minus the two weeks vacation is 50 weeks times five shifts a week is 250 shifts. And then they've just said that every single employee worked 250 shifts every single year, and they're entitled to a meal period for each of those shifts. Another additional... Well, as I said before, we know they didn't each work 250 shifts. It's something else. In addition, this assumes that each employee worked a shift that exceeded five hours because... Well, as I read your complaint, does your complaint ever say that every employee could not take meals? It seems to me that your complaint suggests that only in some instances, when they were the only employee in the store or were training optics, they couldn't take meals. That is the crux of that point. That is. That's right. That's what I understood the complaint to say. So I had a tough time understanding which employees couldn't take the meals, when they couldn't take the meals, who couldn't take the meals. And I, therefore, had a tough time understanding how much money to allocate to that count. I think that's an excellent point. And what I would do in discovery, to take it one step further, is we'll ask for the time records. We'll line them up, and we'll figure out who was working alone, on which days. But that's not what we're at here. They have to prove that, right? To legal certainty. That's your argument. And what they've said is they've come back and said, Well, that's really difficult for us to do. That's very burdensome, and we certainly wouldn't be able to do it within 30 days. The problem with that is they have more than 30 days to remove under CAFA. And we will do this exact exercise. That's the next thing we're going to do. We're going to get into discovery. They're going to give us those time records, and we're going to do that. It's going to happen no matter what. So there's no reason why it wouldn't happen prior to them removing the case or trying to keep the case in federal court. The rest break claim is very similar to the meal break claim. The same problem. When should they have been taken? How can I tell if any of these employees should have been given one? Those are my questions in count three. So I had a tough time arguing how much money I should give to count three to make $5 million. I agree with that. And then the next count is the inaccurate wage statement count. They only get paid every other biweekly, so there would only be 26 wage statements in a year. What they've tried to do is they've tried to add on the commission payments, which we have. Are we in count four now? We are in count – oh, I'm sorry. I skipped count four. I believe this is a vacation claim. So you're now in count five? I'm in count five talking about the wage statements. All right. They only get 26 wage statements per year, and under that statute you can only go back one year. In addition to the wage statements, they've tried to add in the commission payments, which may or may not even constitute wage statements. They've made no showing. Do we even know if that's an injury? We do not. Isn't the California Supreme Court still thinking about whether that's an injury, just to not put the appropriate wage, appropriate addresses and where you should call and when you should call? That's absolutely right. So how do I know whether that adds up to the $5 million or not? I don't believe you do, and I don't believe there's a way to include it. And frankly, as to the commission part of it, we don't even allege that the commissions themselves were calculated improperly at this point. So the additional commission statements wouldn't even be relevant, we wouldn't think. The bottom line is they have access to all the records. Right. They have not presented those records. That is the bottom line. For the vacation claim, they've just made up eight hours out of thin air, saying that each employee lost eight hours of vacation. For the waiting time penalty, they've just applied 30 days to every single employee that was a former employee, regardless of their actual hourly rate. I'd just like to close with one example. Maybe you ought to save some time for rebuttal and see what they say to all this stuff you've said. Okay, I will do that. I'll reserve the remaining three minutes. Okay, stop before you use it. May it please the Court, Julie Dunn on behalf of Dependents and Appellees, U.S. Vision, Inc., and USB Optical, Inc. Feel free to raise any of those questions because I'm more than anxious to answer them. Don't worry, we'll raise them if you have them. Okay, so what we're looking at today is the adequacy of the evidence USB submitted in support of its calculation of the amount in controversy. We've got three guiding principles. One, we have to prove it to a legal certainty. Two, we have to know what that means. What does legal certainty mean? And you've raised that question. It's an excellent question, and there's a great deal of case law that will give us guidance on this. We'll start by the case that was cited by the plaintiff in his papers. That was the Campbell case. I think the site on that is Southern District of Central District of California. Is it a high bar but not an absolute certainty? It says, and this is great. I mean, is that what it is? It says, on the spectrum of burdens of proof, legal certainty falls somewhere between preponderance of the evidence and absolute certainty. Where is absolute certainty? And where do we apply absolute certainty as a standard? There's no other guidance other than plain language, which would be there's no question that this is the amount in controversy. It is confirmed. It is unequivocal. Absolute certainty. So we don't have to meet that level. Okay, so you say we put it on a scale somewhere between preponderance and a standard that doesn't exist anywhere. A standard that does exist. Maybe it's not defined, but it's plain language. Absolute certainty means there's no question. But it's not a legal standard we ever apply. This Court has not applied. That's correct. The standard comes from the Third Circuit. Loudermilk tells us that. When Loudermilk said, what standard are we going to apply, they said legal certainty. They called it a familiar standard from the Third Circuit. If you follow the cases. Well, I really stopped using the word familiar anyway. I talk to my law clerks about that all the time. You know, they tell you the familiar Brown v. Board of Education case. You have to say it's a familiar standard. Okay. Anyway, you say we took it from the Third Circuit. The Third Circuit. And if you follow the. . . Do they know more than we do about what it means? They place it under absolute certainty.  And if you trace the cases back from Campbell. . . I thought in the Third Circuit, under Nelson v. Kiefer, they said, 451 Fed Second 293 at Note 6, that it's a high bar but not absolute certainty. That is exactly right. It is beneath absolute certainty. It is not absolute certainty. That is exactly right. And nothing is in the law. Okay. All right. There may be in life an absolute certainty, but I'm not sure. But we never apply any such. It's a mythical standard of absolute certainty because it's never applied. We can go best with the plain language. Absolute in the law means unequivocal. Okay. Anyway, okay, so. . . If you have an absolute privilege. . . I mean, I think we just have to use some common sense in saying what is beyond the legal certainty. I mean, I don't think any of these standards that we've paid so much attention to. You know, they're all just words. I think if you're going to put it on the scale, at preponderance, it's more likely than that. That one we know. At absolute certainty, plain language means it's unequivocal. Legal certainty, falling in the middle, is going to be a probability. Some courts have referred to it in that phraseology, that it's a probable outcome. Well, that would, to me, that legal certainty means a lot more than probable. What about beyond the reasonable doubt? Where does this fall in relation to that? I would say that reasonable. . . I didn't write the book, but reasonable certainty to me, or beyond a reasonable doubt, falls between legal certainty and absolute certainty. It's somewhere there in the spectrum. Well, let's look at the facts of this case. For instance, the calculations regarding count two assume a violation of Cal Labor Code every day for every employee working. Where the complaint did not allege such consistent and sweeping violations, however, how can it be said that the employees have met the legal certainty? And we're talking about with the second cause, we're talking about the meal period cause of action. Yeah, we're talking about count two. Count two. Okay. The meal period claim. So if you look at the complaint and you start at paragraph 57, the plaintiff alleged, and this is their language, as the master of the complaint, able to set whatever frequency and extent of violation they want, this is their language, what they elected. And this has very serious repercussions for our timeline for removal. So we'll talk about that as well. But they allege defendants had and continues to have a company-wide policy of prohibiting class members from taking statutory meal periods. Class members are not authorized, not permitted, and or do not have a meaningful opportunity to go off duty during a shift. Not some shifts, not occasionally, but during a shift. They go on to say defendants' policies specifically and effectively prohibit class members from taking statutory meal periods during their breaks. There's no limitation there. Well, just a minute, that doesn't necessarily say there's no limitation. That says that happens, and therefore they ought to get some money. That doesn't say it happens to everybody, every time, every place. It says it happens. It says the policies specifically and effectively prohibit class members from taking statutory meal periods during their shifts. And sometimes it does. It does not say that. Well, I guess I'm trying to determine why you suggest that from looking at that, and I read that 30 times, and I guess I'm trying to figure out how I can say that that means every employee, every day, every time, always. And if I disagree with you, then your argument's over? Is that it? No, absolutely not. So let's follow this down because there's several layers to this analysis that all are critical to this removal statute. So the first one is, you look at that, they don't state their own limitation. So the plaintiffs suggest you have to offer summary judgment evidence in support of your petition for removal. Well, according to Ninth Circuit law, the allegations of a plaintiff's complaint are evidence. They're binding on the party, and they are binding on the court. Was it certified? Was what certified? The complaint. It doesn't have to be certified. It doesn't? It does not. What case says that? American Title Insurance Company v. Laslo Corporation. Well, I've read that, and I'm not sure that's exactly what it says. But if you go on, just suppose you say it says that. Okay. I'll read you the cite on that one. It says, factual assertions, factual assertions, not verified ones, factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions, conclusively binding on the party who made them. Well, I've got quite a few cases where we've not given the complaint that kind of evidence as even on summary judgment. In other words, because it wasn't applied to, we didn't hold it to the same standard. We required them to bring us affidavits suggesting that that's what it ought to be. There are a lot of cases like that. But in removal, it's different. Well, I understand. Under removal, I take the allegations in the complaint as true, and then I also assume maximum damages for the amount in controversy, especially since the plaintiff could have limited the claims in the complaint. And then, after I get through doing that, then I look also at what you suggested in your facts of removal petition. That's correct. And so when I look at all of those, then I try to see if it makes $5 million. That's absolutely right. All right. So we start out with an unlimited allegation in the complaint. There is no limitation. Our policies and procedures effectively prohibit class members from taking meal periods during their shifts. So then the next question is, is that summary judgment evidence? The answer, according to Ninth Circuit law, it most certainly is. Rules of pleading. The plaintiff is the master of their complaint. If they wanted to allege a less frequent violation, they were free to do so. With their off-the-clock claim, they did do so. They said 15 to 30 minutes. Now, here's where Loudermilk comes in. Plaintiff claims that, according to Loudermilk, you can never rely on the allegations of the complaint. You have to submit evidence for every element of your calculation. Loudermilk said exactly the opposite. What happened in Loudermilk? In the first cause of action that the court analyzed, the one for the late payment of wages, the defendant in removing said, we will assume that every class member gets the full 30 days. Loudermilk says, you may not do that, defendant. And the reason you may not is the plaintiff is the master of the complaint. And the plaintiff in this case said, class members are entitled to up to 30 days, not the full. So you're not permitted to assume the maximum. What Loudermilk says is, if you're going to contradict the allegations of the complaint, then you have to submit evidence that shows the allegations of the complaint are false, reality is different. Loudermilk, however, makes clear that we are bound by the allegations of the plaintiff's complaint. We must follow them and we must adhere to them. Now, let's take it from plaintiff's perspective. If plaintiff says, never mind the allegations of my complaint, they're meaningless. The only allegation that matters is that I say it's under $5 million. And as here, the plaintiff says, and by the way, your business records are unreliable. People work time, before and after shifts that they didn't record. They worked through their meal periods, even though they clocked out they were still required to work. We can't go to our business records. So what is a defendant left with? If you're going to submit summary judgment type evidence. Well, here you gave us three affidavits, didn't you? We sure did. Mary Lou Kelly, Stan Schulas, and Denise Visconti. That's absolutely correct. And in those affidavits, let's just go to count one. From the Kelly affidavit, I can calculate that managers work 250 days per year. Where do I find the facts that allow me to calculate how much time the optics work? From the same basic framework. I mean, I can find five-hour shifts, but nothing tells me how many days they work.  But it doesn't say how many days or how many shifts they work. I can only say five-hour shifts. Right. Okay. That's one question I had. Where do I find the definition of full-time equivalent employee? Okay. In what affidavit? It again comes from Stan Schulas and Mary Lou Kelly. It isn't in Stan Schulas' affidavit, nor Denise Visconti's, nor Mary Lou Kelly's. There is no definition of full-time equivalent employee. Tell me where it is. Show me in the play. I completely understand your question. Let me respond to it. Counsel, when he made his argument, said, there's not a declaration that says what is the entire size of the class. As we all know, that number doesn't go into the calculations. I can't take all class members, multiply it by the violation per day, multiply it by so many days a week. It's only the full-time equivalents, right? We hire enough people to cover seven days' worth of shifts. So if you look at any one day, how many people are employed on that day, all of them are going to work five-day shifts because we're covering a seven-day work week. Let me ask a question about Laudermill. On page 1002, it says, if defendant, who is the only party with access to its employment records, cannot more accurately approximate the class size, plaintiff cannot be expected to plead her case with any more specificity than she did. Yes. I'm so glad you read that quote. And the first reason is, is because even the Ninth Circuit said it's an approximation of the class size. If the defendant cannot, with its own records, approximate the class size, you don't have to give it to an absolute certainty, only to a legal certainty. That's number one. Number two, the context of this discussion in Laudermill arises with respect to the rounding claim. Recall in Laudermill that the defendant, when removing the case, offered no argument and no evidence on the rounding claim at all. On appeal, when they were worried about whether their late payment of wages claim would carry the day and meet the amount of controversy, they said, by the way, there's also this rounding claim, and allow us to give you some evidence as to that. Too late to offer declarations because they didn't do it in the trial court. So what did they do? They offered an attorney's notation of the size of a different class in a different lawsuit. And the Ninth Circuit properly said, that's not summary judgment evidence. You have an attorney in this case saying that in that case there were 9,000 class members. Oh, there's probably 9,000 here. I guess I'm stuck with what did you offer? We offered the declaration of Stan Shulis who said, for purposes of calculating the amount in controversy, we will look at the number of employees employed at any one time. Because at any given time, these are the people we have covering all of our shifts during a week. We take that number and we multiply it only by five shifts. Only by five shifts, not seven, because those total number of people are employed to cover not just five, but seven shifts. Well, I guess my worry about this is reading the Kelly affidavit and trying to compare it to the Shulis affidavit, I couldn't find any definition of full-time equivalent employee. I can't tell whether each full-time equivalent employee works 250 days. I can't find how many such employees there are. And I certainly can't tell whether objects are full-time equivalent employees. If they are, that's contradicted by Kelly's affidavit. So given what I have here, it seems to me that only the managers are included in full-time equivalent employees. And if that, then their losses don't meet the mark. I mean, I took the whole thing, trying to take the affidavits, put it in perspective as to Count 1, and try to give you a value. And frankly, you've dared to everything I've got to say about Count 1, and I can't make it meet the mark. And so therefore, I don't give you credit for the amount you say is meeting the mark because I can't find the stuff. And I went through each one of these in each one of these situations, like in Count 2. Defendants deny that the plaintiff and the class are not taking lawful meal breaks. But the complaint in my book doesn't say that every employee can't take a meal break. He says some. He says there are employees that can't take a meal break. So only in some instances they were the only employee in the store or were training optics. That's the way I read the complaint. I don't know how to calculate that. Can I address that in particular, Your Honor? Yes, but you're already two minutes over, so if you'd address it in one more minute. Okay. With respect to that allegation, if you look at how the complaint is laid out, the first statement is they are effectively prohibited from ever taking a meal period. In the ensuing paragraphs, they give examples. Paragraph 59, for instance, sometimes they're scheduled alone. Later in paragraph 59, defendants ask them to clock out but keep working. Paragraph 60, furthermore, there were occasions where they were scheduled with a trainee. Paragraph 61, they weren't provided second meal periods. If you look at paragraph 60, here's the key language. Again, confirming it's never. After they go through and talk about the optics trainees in the store, they say this practice, along with defendants' other policies, all of the policies, prevented the manager or trainers from taking a meal period. It's all the time, according to the complaint. One final issue, because this is critical. Two seconds. Okay. Plaintiff says we don't have to remove or make our showing in 30 days. That is false. Under the statute, once we receive a document that tells us the theories of the claim, we have 30 days to establish the amount in controversy. It doesn't matter that he alleged in his complaint that it's under $5 million, because every one of these constant violations that he alleges puts us on notice that that's his claim. He can never amend this claim later to say the violations were any more frequent than he has. He has alleged for waiting time penalties. Specifically, every class member is entitled to the entire 30 days, or 30 days' worth of waiting time penalties. If we don't remove within 30 days, we don't get the chance to remove at all. Thank you, Kirsten. Thank you. Just briefly, Your Honors, I want to make one example that I think kind of drives all the points we've been talking about. What they've done is they've taken a snapshot of one day during each year. If, based on their damage model, one employee that worked one week and just happened to get caught in that snapshot, but then was terminated or quit after the one week of work, would be entitled under their damage model to 5,750 minutes of off-the-clock work, 250 meal break violations, 250 rest break violations, 8 hours of missed vacation, 38 inaccurate wage statements, 38 improper instruments. Well, I assume that if he quit that they would hire another employee who would take his place and you would add the two together over a year. Well, it's important that that would be an assumption. But I think the point is there's no consistency. What they've been telling you is there's this consistency amongst a number of employees. We use this FTE standard, which nobody sees anywhere. But if you look at the declaration that they submitted, in 2006 there were 50 managers. In 2007, at that same point in time, there were 59 managers. The number of employees goes from 108 employees to 125 employees. There's no real consistency there. And, in fact, if you look at, for instance, the number of managers, they had about 50 stores. They had 49 stores or 48 stores in 2006, and they had 50 managers. So it looks like one manager per store. The next year they only have one more store, but suddenly they have 10 more managers. So it's not for us to speculate as to what happened or whether there was somebody being replaced or perhaps on that one given day someone might have been on their way out while a new manager was on their way in. There's just no way for me to know that. What I can tell you is it's nonsense to argue that they have no ability to simply look at their electronic records from their own timekeeping software and tell us the number of employees, the number of shifts that those particular employees worked, and the applicable hourly rates that those employees made during the four-year period of time. This is a very, very straightforward calculation that is going to be done in this case. It's just going to happen as soon as we get past the pleading stage. And then you'll be arguing the opposite sides of the case. Hopefully not. But in my example I gave, Your Honors, that amounts to about $14,600 for that one employee that would have no missed meal breaks, assuming they were training and actually taking their breaks during that period of time, no missed rest breaks. They'd have no vacation pay earned. They would have only received one wage statement, and they would be entitled to no waiting time penalties. To clarify one point that I think... Fifteen seconds to clarify. Okay. You know what? On that I'll just rest. I don't think I have anything else. Thank you, sir. The case just argued will be submitted. The Court will stand in recess for the day. Thank you for your argument. Thank you, Your Honor. Thank you very much for your argument. Thank you for your argument.
judges: Nelson D. W., Reinhardt, Smith N. R.